## LOCAL NO. 181, HOTEL & RESTAURANT EMPLOYEES UNION et al. v. BROADWAY & FOURTH AVENUE REALTY CO.

## LOCAL NO. 181, HOTEL & RESTAURANT EMPLOYEES UNION et al. v. BROWN HOTEL CO.

Court of Appeals of Kentucky.

May 2, 1952.

Leon J. Shaikun, Herbert L. Segal, Louisville, for appellants.

Bullitt, Dawson & Tarrant, Louisville, for appellee.

CULLEN, Commissioner.

We have before us appeals by three labor unions, their business agents and some of their individual members who were made parties as representatives of the entire membership, from two judgments of the Jefferson Circuit Court, entered in consolidated actions, having to do with the right of the unions to picket the Brown Hotel, the Kentucky Hotel, and the Martin Brown Building, in Louisville.

The Brown Hotel and the Kentucky Hotel are owned and operated by the Brown Hotel Company, a corporation. The Martin Brown Building (an office building) is owned and operated by the Broadway and Fourth Avenue Realty Company, another corporation. Mr. Graham Brown is the owner, directly or indirectly, of both corporations.

In March 1951, employes of the two hotels and of the Martin Brown Building went out on strike, and the unions commenced picketing at the three buildings. The two corporations filed suits for injunctions, which suits were consolidated, and on April 6, 1951, a permanent injunction was entered, enjoining all picketing except peaceful picketing by a specified number of pickets at each of the three buildings.

On May 4, 1951, the corporations filed motion for a contempt rule against the unions, alleging violation of the injunction. Following a hearing at which considerable evidence was introduced, a judgment was entered, on May 24, 1951, in which the court found that the picketing itself had been peaceful, but had been conducted and maintained "in a setting of violence, intimidation and other lawless acts directly attributable to the three unions and their respective members." The judgment therefore declared that all picketing was enjoined, but that this part of the judgment would not become effective unless the unions, in the future, were found to have been guilty "of some other act in violation of the permanent injunction" of April 6, or unless the union failed to put up a $25,000 bond guaranteeing payment of any damage resulting from "subsequent acts in violation of said injunction."

One of the appeals now before us is from the above judgment of May 24.

The unions filed the bond required by the judgment of May 24, and continued to maintain their picket lines. On July 31, 1951, the corporations filed a motion, based upon an alleged violent act by one of the pickets, asking that the court immediately put into effect that portion of the judgment of May 24 requiring the removal of all pickets. Proof was heard, and the court took the matter under advisement. Early in December, and before the motion of July 31 had been decided, the corporations filed a motion to hear additional proof as to further acts of violence that had oc-

curred since July. The additional evidence was heard, and on December 13 the court entered a judgment finding that since the entry of the judgment of May 24 the unions had been guilty of acts in violation of the injunction of April 6. Upon this finding the court adjudged that there be put into immediate effect the provisions of the judgment of May 24 enjoining all picketing.

The second of the two appeals before us is from the judgment of December 13.

With respect to the judgment of May 24, the unions contend (1) that there was not sufficient evidence to warrant the finding that the unions were in contempt of court, and (2) that the court had no authority, in a contempt proceeding, to enter any judgment other than for a fine and imprisonment within the limits fixed by KRS 432.260. The latter contention was decided adversely to the unions in Local No. 181, Hotel and Restaurant Employees Union v. Miller, Ky., 240 S.W.2d 576, and will not be again considered on this appeal.

As to the sufficiency of the evidence, the proof showed numerous and aggravated acts of violence, during the period from April 6 to May 9, against employes of the hotels, guests of the hotels, and persons selling goods to the hotels. Assaults were committed against employes; rocks and flaming bricks were thrown at night through the windows of employes' homes; on one occasion poison was placed in the food served to employes in one of the hotels, and on another occasion poison was placed in the food served to guests of the hotel, resulting in more than forty guests becoming ill; an explosive bomb was placed in the lobby of the Kentucky Hotel on the night before the Derby, when the hotel was crowded with guests, and a stench bomb was placed in the lobby of the Brown Hotel on the same night; a truck belonging to a company delivering merchandise to the hotels was dynamited; and there were other acts of intimidation or violence.

The contention on behalf of the unions is not so much that the nature of the acts committed was not sufficient to justify the contempt judgment, but rather that there was no proof that the unions were responsible for or connected with the acts. The unions argue that the acts were merely isolated or sporadic outbursts of individual tempers, with no underlying pattern or plan such as to indicate union responsibility.

In answer to this contention, there was proof that during the period in question no act of violence or intimidation against employes, guests or merchandise suppliers of any other hotel in Louisville was reported to the police. In view of this fact, and in view of the fact that the acts of violence involving the Brown Hotel and the Kentucky Hotel occurred almost nightly during a period of more than a month, commencing immediately after the injunction of April 6, we cannot say that the lower court erred in finding as a fact that the lawless acts were "directly attributable to the three unions and their respective members".

As stated by the Supreme Court of the United States, in Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 555, 85 L.Ed. 836:

"These acts of violence are neither episodic nor isolated. Judges need not be so innocent of the actualities of such an industrial conflict as this record discloses as to find in the Constitution a denial of the right * * * to conclude that the use of force on such a scale was not the conduct of a few irresponsible outsiders. * * *"

That the court did not err in fixing union responsibility for the acts of violence is borne out by the fact that, following the execution by the unions of the bond required by the judgment of May 24, there was almost a complete cessation of the kinds of acts that had been taking place

We think there was sufficient evidence to support the judgment of May 24.

Concerning the judgment of December 13, it is again contended that there was an insufficiency of evidence to support the judgment. The evidence had relation to three separate incidents that occurred between May 24 and December 13. On July 23, one of the pickets at the Brown Hotel was observed to be carrying an open knife

in his hand as he walked back and forth in front of the hotel entrance. The police were called and upon their arrival the picket resisted arrest, and cut one of the policemen with the knife before he was subdued. On August 2, a colored doorman at the Brown Hotel, who had testified on behalf of the hotel company, concerning the knife incident, at the hearing on the company's motion for an order withdrawing all pickets, was accosted by a woman picket as he left the hotel, and was accused of testifying against his race. An altercation developed, in which blows were struck by both participants. On December 6, at 9:30 p.m., as two girl employes were leaving the Brown Hotel by a service entrance opening onto an alley, acid or a strong chemical was thrown upon them by one of two men who were standing in the alley. The two men then ran out of the alley together. The girls were unable to identify the man who threw the liquid, but the other man was identified as one of the pickets. The liquid struck the face and one eye of one of the girls, and the arms of both girls, and caused a burning and irritation. There was testimony that loss of sight might have resulted had a sufficient quantity of the liquid struck the eyes of the girls. On December 7 and 8, the two girls received several anonymous telephone calls, in which the callers made reference to the acid-throwing and in threatening tones directed the girls to stay away from the hotel and from the courthouse.

The unions point to the fact that during the period of more than six months from May 24 to December 13 there occurred only the three incidents above referred to, and they argue that these incidents were isolated acts of individuals; that the first two incidents were insignificant; and that the pickets or the union were not proved to have any connection with the third incident. It is contended that these incidents are not sufficient to warrant a belief that there is no hope for peaceful picketing, or to justify imposition of the drastic penalty of removal of all pickets.

It is our opinion that the incidents occurring after the May 24 judgment cannot be isolated from those occurring before,

but must be considered in their proper perspective as a part of the history of this labor controversy. While the unions, for the most part, displayed conduct after May 24 indicating that there could be a peaceful exercise of their right of freedom of speech, it was demonstrated by the acid-throwing event that violence could not be avoided. Such an event was well calculated to give new impetus to the "momentum of fear generated by past violence". Milk Wagon Drivers Union v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 555, 85 L.Ed. 836.

Under the circumstances, we think the lower court was justified in concluding that picketing could not be conducted without attendant acts of violence, and therefore in ordering that all pickets be removed.

A further contention of the unions, with respect to both judgments appealed from, is that there was no basis for making the judgments applicable to picketing at the Martin Brown Building. It is pointed out that none of the acts of violence, upon which the judgments were based, involved employes or patrons of the Martin Brown Building, and it is maintained that the labor dispute at the Martin Brown Building is separate and distinct from the one at the two hotels.

As stated at the outset of this opinion, Mr. Graham Brown is in reality the owner of the three buildings, and throughout the proceedings Mr. Brown has been treated as the employer with whom the unions have their dispute. In substance, there is one labor dispute, between the employes of the Graham Brown enterprises and Mr. Brown. The suit involving the two hotels was consolidated in the lower court with the suit involving the Martin Brown Building, and the judgments of April 6, May 24 and December 13 were judgments in the consolidated cases.

Supporting the conclusion that this is in the broad sense one labor dispute, is the fact that when the strike first commenced, picketing was begun at the Martin Brown Building, as well as at the two hotels, although at that time there was no claim of a labor dispute affecting the employes of the Martin Brown Building.

In the eyes of the public, this has been a strike against Mr. Graham Brown, and the acts of violence have been committed by persons having a labor dispute with Mr. Brown. The picketing at the Martin Brown Building cannot be separated from that at the two hotels from the standpoint of the fear on the part of the public generated by past violence.

The judgments are affirmed.